8416

GIBSON v. GIBSON.

1. JUDGMENT—DOWER.—The part of the decree here complained of con-·
   strued to mean that appellant was given the option to release from
   the right of dower of testator's wife or to surrender her dower inter-
   est in *only* so much land as is adjudged to be his and does not
   require him to pay the dower interest in all lands of testator.
2. WILLS.—Under the terms of the will here and the facts it is *held*
   the appellant is only entitled to the land he actually had in posses-
   sion at death of testator.
3. REAL PROPERTY.—Grantee should not be heard to say that the inten-
   tion was to include other lands in the deed than those described
   therein and that his grantor was in possession of such other lands
   by his permission.

Before SHIPP, J., Florence.     Affirmed.

Action by Rebecca A. Gibson in her own right and as
guardian *et al.* against James S. Gibson *et al.*  So much of
the Circuit decree as refers to the matters in issue here is:

"The serious controversy in this case is as to the proper
construction of the following clauses of the will of N. S.
Gibson: 'I confirm the gifts of land as given to my nephew,
James S. Gibson, and my niece, Eliza Haigh, namely, to
James S. Gibson all the land now in his possession, known
as the White House and Oakey Point, having such bound-
aries as they now stand.' The defendant, James S. Gibson,
contends that he takes under this clause of the will all of
the tracts called White House and Oakey Point, while the
plaintiffs and Rebecca Gibson and her children, the infant
defendants, contend that he takes only those portions of
White House and Oakey Point actually in his possession
when the will was written and when testator died.  It is
contended in behalf of the infant defendants that they take
the portions of White House and Oakey Point not in pos-
session of James S. Gibson under the residuary clause of
the will, which is as follows: 'I give to my wife, Rebecca

Gibson, all the remaining property which I have, the Wiggins Hill and all land lying north of the line now between James S. Gibson and myself, together with all moneys, stocks, bonds, mortgages and stock of goods, accounts, etc The same to be held in trust for her children, George H., Mary A., McCall Hyman and my daughter, Martha Savage Gibson.'

"The testimony conclusively shows, and I so find, that the only portion of White House in the possession of James S. Gibson was that portion beyond the ditch immediately beyond the house occupied at the time the testimony was taken by Serena Gibson, looking from the railroad track southeast down the road marked on the consolidated plat introduced in testimony as 'Exhibit L,' 'Darlington Road,' and called in the complaint the 'Old Georgetown Road,' and the only portion of Oakey Point in possession of James S. Gibson was the 438 acres described in the deed of N. S. Gibson to James S. Gibson, dated January 21st, 1907, and recorded in the office of the clerk of Court of Florence county on May 15th, 1907, in book 'W,' page 471. I concur in the construction of the executors of the devise to James S. Gibson, and hold that the land actually in his possession is all that he can take. In opposition to this construction James S. Gibson chiefly places reliance upon the fact that he paid taxes during the last year or two of the life of N. S. Gibson on all of the White House tract and 788 acres of the Oakey Point tract, and also in addition upon the use of the word 'confirm' in the expression 'I confirm the gifts of land as given to my nephew, James S. Gibson,' his contention being that the testator must have had reference to some other portion of Oakey Point for the reason that he would not confirm the gift of the 438 acres of Oakey Point for which he had already made a deed to James S. Gibson, that a deed already having been made a confirmation would not be necessary.

"I do not regard the matter of the payment of the taxes material or even suggestive under the facts of this case. J. S. Gibson was using a large amount of N. S. Gibson's land without the payment of rent or any other consideration except the payment of taxes. He concedes that the land belonged to N. S. Gibson and that his title was not divested by this payment of taxes, but he urges the fact that the testator was requiring him to pay taxes as indicative of testator's intention with reference to the final disposition of this land. Concede that it might be equivalent to an expression of intention, yet should the expression be inconsistent with the plain language of a formal will subsequently made, the will would necessarily prevail. The will plainly says he shall take the portions of White House and Oakey Point *now* in his possession, and if he takes under the will, as he concedes he does, it makes no difference what taxes he was paying. But, aside from this, J. S. Gibson, though he appears to think so, was not paying taxes on all the Oakey Point tract. Although the complaint alleges that Oakey Point constains 788 acres, more or less, yet the plats introduced in testimony in behalf of J. S. Gibson himself show the true acreage to be 1,433½ acres, while J. S. Gibson was only paying taxes on 788 acres. There is a perfectly reasonable explanation of J. S. Gibson's paying taxes on 788 acres of Oakey Point. N. S. Gibson first placed him in possession of 350 acres of this tract and verbally directed the auditor to charge this 350 acres on the tax books to J. S. Gibson; and a pencil memorandum appears on the auditor's book made at the time, showing that N. S. Gibson had transferred 350 acres to J. S. Gibson. After placing J. S. Gibson in possession of this 350 acres N. S. Gibson added to his possession enough land to make it 438 acres, and made a deed for the 438 acres, the 350 acres, of course, being included in the 438. This deed was recorded May 15th, 1907. The auditor testified that if a transfer should pass through his office during the first half of 1907, he would make a pencil notation of

the transfer on the book of 1906. On the book of 1906 is a pencil notation of a sale by N. S. Gibson to J. S. Gibson of 438 acres, and no doubt this notation was made when the deed for the 438 acres passed through the auditor's office in its regular course, and 350 acres was thus duplicated. It is not improbable that this is the explanation of 788 acres of Oakey Point being charged to J. S. Gibson instead of 438 acres, but if it is not, and the payment of taxes can be construed to be equivalent to an expression of intention, yet the expression cannot be given effect, because it is totally inconsistent with the plain language of the will.

"The testator wrote his own will and it is rather inartificially drawn, and it would be manifestly improper to place upon the word 'confirm' such a strained and ultratechnical meaning as would defeat the plain intention of the will, yet even if the word must be technically construed, it cannot avail J. S. Gibson. The deed for the 438 acres was a pure gratuity, and J. S. Gibson himself says it was made to him by N. S. Gibson without consideration in order to clothe him with collateral to raise money to pay his deceased brother's debts, or as expressed in J. S. Gibson's answer, 'for his convenience.' Under these circumstances it was a very apt word to use to place the gift beyond all question or doubt. However, there is no room for doubt that all the land which the testator had given J. S. Gibson when the will was written and when he died was that which has been found to have actually been in J. S. Gibson's possession, and it does not matter whether the word 'confirm' be construed liberally or technically there is nothing else for it to operate upon. The testator merely intended to confirm or place beyond doubt or question the land which he had previously given to J. S. Gibson and which he was actually occupying, and this was all of the White House and Oakey Point tracts he intended him to take.

"The special master considers the use of the word *north* in the residuary clause of the will significant as throwing

light upon the devise to J. S. Gibson. The residuary clause devises 'all the remaining property which I have, the Wiggins Hill and all land lying north of the line now between James S. Gibson and myself * * *.' The special master reaches the conclusion that only a very small portion of the disputed land is north of the line mentioned, and that, therefore, such land as does not answer the description *north* must have been intended for James S. Gibson. While it is true that resort may sometimes be had to other parts of a will to throw light upon or to explain ambiguous or doubtful expressions, yet this is not such a case, for the devise to James S. Gibson is perfectly plain and unambiguous, and even though the testator should omit some piece of property entirely in attempting to give a general description of all his remaining property, yet the omitted piece could by no means be added to some other devise, the description of which clearly excluded it. In this case, however, the testimony and plats plainly show that the disputed land, while not all exactly north, is yet nearly all in the general direction of what appears to have been considered north by all the parties in interest. But in any event it is perfectly manifest that the testator did not intend this land for James S. Gibson, and since it cannot by any possibility answer the description of any of the other devises, it must pass under the residuary clause, which disposes of 'all my remaining property,' and I so hold.

"It is therefore ordered, adjudged and decreed, that of the Oakey Point and White House tracts J. S. Gibson takes under the will of N. S. Gibson 438 acres of the tract called Oakey Point, the said 438 acres being described in the deed of N. S. Gibson to J. S. Gibson, dated January 21st, 1907, and recorded in the office of the clerk of the Court of Florence county, on May 15th, 1907, in Book 'W,' at page 471, and subject to the dower right of Rebecca Gibson, hereinbefore provided for, that portion of the White House tract beyond the ditch immediately beyond the house of Serena

Gibson, looking from the railroad track southeast down the road marked on the consolidated plat introduced in testimony as 'Exhibit L,' 'Darlington Road,' and called in the complaint the 'Old Georgetown Road,' and that the remainder of these tracts, subject to the dower right of Rebecca Gibson, passes to the beneficiaries under the residuary clause of the will.

"It is further ordered, adjudged and decreed, that the report of the special master is modified to conform to the views herein expressed, and in all other respects confirmed and adopted as the decree of this Court.

"It is further ordered, that it be referred to the judge of probate, acting master, to ascertain and report to this Court a reasonable fee to be allowed the attorney representing the infant defendants in this cause."

From this decree defendant, James S. Gibson, appeals.

*Messrs. Willcox & Willcox* and *Henry E. Davis,* for appellant, cite: *All parts of a will must be considered in construing it:* 1 DeS. 237; 2 DeS. 451; 1 Strob. Eq. 96; 1 Hill Eq. 95; 79 S. C. 166; 30 Ency. 664. *A residuary clause disposes of only a particular residuum:* 1 Hill Eq. 95; Strob. Eq. 96. *Meaning of confirmed:* 2 Words & Phrases 1425-6. *Definite terms control indefinite terms:* 3 Strob. 127; 31 S. C. 171. *Estoppel by conduct:* 3 Strob. 371; 13 S. C. 369, 375; 27 S. C. 234; 4 A. & E. Dec. in Eq. 258, 422; 25 S. C. 555; 56 S. C. 476; 57 S. C. 267, 507; 76 S. C. 573; 31 S. C. 153; 4 A. & E. Dec. in Eq. 289.

*Mr. J. P. McNeill,* for plaintiff in her own right and for defendants-respondents, contra, cites: *Whether an instrument is a will depends on the intention of the maker:* 2 N. & McC. 531; 5 Strob. 167; 1 McC. 409; 36 Col. 75; 2 Rawle 133; 1 McC. 517; 31 S. C. 609.

*Mr. A. F. Woods,* for plaintiff as executrix, contra, cites: *Mere notation on tax books does not bind maker to anything:*

78 S. C. 494. *Import of the word "confirm:"* 8 Cyc. 565; 20 S. C. 424. *Erroneous words of direction should never be allowed to defeat intention:* 67 S. C. 32. *Definition of "possession:"* 2 Rich. 288.

January 17, 1913. The opinion of the Court was delivered by

MR. JUSTICE FRASER. This is an action for the settlement of the estate of N. S. Gibson. There are but two questions before this Court. The widow was allowed dower in language that the appellant thinks is too broad and that requires him to pay the whole dower. The appellant also thinks that he ought to have the whole of two tracts of land and the decree only assigns him a part of each. The exceptions will be considered as made.

Exception I. "His Honor erred, it is respectfully submitted, in requiring commissioners to go upon all the lands of which N. S. Gibson died seized and admeasure to said Rebecca A. Gibson one-third of the lands aforesaid unless defendant, James S. Gibson, within sixty days from the filing of the decree, pay to the said Rebecca Gibson, or her attorney, one-sixth of the value of said lands, the value thereof to be ascertained in the manner prescribed by law. He should have allowed the defendant, James S. Gibson, to release the lands claimed by him without the necessity of paying for the dower of Mrs. Gibson in lands to which he made no claim."

This exception shows on its face that James S. Gibson was not required to pay the whole dower or any part of it. It must be construed to mean that James S. Gibson should surrender the proportion of the land or pay his proportion of the dower. The option that he claims, *i. e.,* to surrender the proportion of land instead of paying the sixth of the assessed value was fully provided for.

This exception is overruled.

Exception II. "His Honor erred, it is respectfully submitted, in finding and holding that the testimony conclusively shows that the only portion of White House in the possession of James S. Gibson was that portion beyond the ditch immediately beyond the house occupied by Serena Gibson, and that the only portion of Oakey Point which was in possession of Jas. S. Gibson was the four hundred and thirty-eight acres previously conveyed to him by formal deed of conveyance. He should have held that Jas. S. Gibson was at the time of the making of the will of N. S. Gibson in possession of White House to the railroad on the north, and of all Oakey Point except a small parcel thereof including the store building, the ginnery and the buildings immediately surrounding same, and that by said will the said N. S. Gibson devised all of White House and all of Oakey Point except the small parcel just mentioned to said Jas. S. Gibson."

This exception must be overruled for the reasons stated by the Circuit Judge. It is unnecessary to repeat his statements as his decree will be reported.

This Court will only add, that if a vendee of a portion of a tract of land were permitted to say after the vender's death, "It is true only a portion of the land was included in my deed, but the intention was to include the whole tract, and the vendor used the part not included in my deed by my permission," no holding of land would be safe.

The judgment appealed from is confirmed.

MR. JUSTICE WOODS *disqualified.*